

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RUDY CARTER,
              Petitioner,

              **MEMORANDUM & ORDER**
-against-            12-CV-4168 (TCP)

CHARLES F. KELLY,
              Respondent.
-----------------------------------------------------------X
PLATT, District Judge.

Before the Court is Rudy Carter's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Petitioner's conviction, following a jury trial in New York States Supreme Court (Nassau County), and the subsequently imposed sentence. The Court **DENIES** Petitioner's motion.

## BACKGROUND

### A. Facts

Petitioner is a prisoner at Marcy Correctional Facility in Marcy, New York. Pet'r's Pet. 1. On August 8, 1979, "[Petitioner] raped his thirty-seven-year-old second cousin." Resp't's Aff. ¶ 6, Resp't's Resp., ECF No. 7. Petitioner was arrested the same day and, on October 29, 1979, Petitioner was charged with rape in the first degree (New York Penal Law ("NYPL") § 130.35(1)) and sexual abuse in the first degree (NYPL § 130.65(1)). *Id.* at ¶¶ 8-9. On March 30, 1981, a jury trial commenced. *Id.* at ¶ 9.

> On April 6, 1981, after [the victim] had already testified against him, Petitioner failed to appear for trial. The following day he was convicted in absentia of both charges. On April 8, 1981, a bench warrant was issued for his arrest. Sentencing was adjourned for Petitioner's return on the warrant.

*Id.*

At some point in the 1980s, the trial transcripts from Petitioner's trial were accidentally destroyed in a flood or fire. *Id.* at ¶ 12. On March 4, 2010 (29 years after he disappeared during the trial), Petitioner was arrested in New Jersey; shortly thereafter, he was transported to Nassau County. *Id.* at ¶ 11. On February 7, 2011, Petitioner was sentenced to the minimum authorized sentence of two-to-six years in prison. *Id.* at ¶ 25.

Petitioner appealed his conviction in the New York Supreme Court, Appellate Division, Second Department on the same bases upon which he petition's this Court. *See, e.g.*, Pet'r's Appellate Brief, Resp't's Resp., Ex. 6. On January 31, 2012, the Appellate Division affirmed the conviction. *People v. Carter*, 937 N.Y.S.2d 333 (N.Y. App. Div. 2012) (herein, *Appellate Holding*). The Appellate Division held that "the lengthy delay in sentencing was due solely to the fact that [Petitioner] absconded in the middle of the trial and remained at large for 29 years . . ." *Id.* at 334. As to the unavailability of the trial transcripts, the Court held "these circumstances are attributable in large part to the lengthy delay caused by the defendant himself." *Id.* As to the trial's completion during Petitioner's absence, the Court held that "although a defendant has a fundamental right to be present at all material stages of his trial, he or she may forfeit that right, *inter alia*, by deliberately absenting himself or herself after the trial has begun." *Id.*

On April 17, 2012, the New York Court of Appeals denied Petitioner's Leave to Appeal. *See* Resp't's Resp., Ex. 11 (Order Denying Leave).

**B.    Claims**

Petitioner's presents four grounds for relief: (1) The State court denied Petitioner's right to a meaningful appeal as to the availability of the trial transcripts; (2) the State court denied Petitioner's right to a prompt sentencing; (3) the State court denied Petitioner's trial-notice rights; and (4) the State court denied Petitioner's trial-confrontation rights. Pet'r's Pet. 5-6.

2

## DISCUSSION

### A. Legal Standard for a Petition for a Writ of Habeas Corpus

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in the state courts. *See* 28 U.S.C. § 2254(b)(1)(a). Exhaustion requires alerting the state courts to the Federal nature of the claim and raising the claim in the state's highest court. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 839-40 (1999).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." *Id.* at (b)(1)(a).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at (d).

> If an application [for a Writ of Habeas Corpus] includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim": "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This is [] 'difficult to meet,' *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002).

3

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

**B. Analysis**

Petitioner exhausted all remedies available to him in the state courts and alerted the State courts to the Federal nature of his claims. As such, the Petition is properly before this Court.

The State courts adjudicated Petitioner's claims on their merits. Neither the trial court's decision nor the Appellate Division's affirmation were contrary to, or unreasonably applied, clearly established Federal law. *Cullen*, 131 S. Ct. at 1398. The Court holds, *in toto*, that the State courts' holdings were based upon reasonable determinations of the facts before those courts. *Id.*

**I. Claim One – Missing Trial Transcripts**

**a. Legal Standard**

The United States Supreme Court has held that criminal appeals must comply with the demands of the Due Process and Equal Protection Clauses of the U.S. Constitution. *See Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *see also Smith v. Robbins*, 528 U.S. 259, 276-77 (2000) (criminal appellant must have the minimum safeguards necessary to make their appeal "adequate and effective.")

If trial transcripts are unavailable, the United States Supreme Court requires "a 'record of sufficient completeness' to permit proper consideration of (his) claims." *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971) (citing *Rinaldi v. Yeager*, 384 U.S. 305, 310 (1966)). "This does not mean a verbatim transcript of the entire proceedings. What is constitutionally impermissible is the total denial of a transcript *based on indigency*." *Quinones v. New York State*

4

*Div. of Parole*, No. 07 Civ. 8633, 2008 WL 2276540, at *4 (S.D.N.Y. June 2, 2008) (citing *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)) (emphasis added).

Even if a reconstruction hearing cannot afford a petitioner an equivalent report, "the Second Circuit also requires also requires a showing of prejudice." *Id.* "Mere speculation of possible prejudice resulting from a missing or incomplete transcript is not enough." *Id.* (citing *Godfrey v. Irvin*, 871 F. Supp. 577, 584 (W.D.N.Y. 1994)). The fact that a petitioner caused the transcript loss is "relevant" as well. *Id.*

### b.  Analysis

The Appellate Division reasonably concluded that Petitioner's 29-year flight from justice largely caused the transcripts to be unavailable by the time sentencing and appeal occurred. Had Petitioner not fled, his sentencing would have occurred soon after his conviction and his appeal soon thereafter; Petitioner's actions caused the delay, which is clearly relevant. *See Quinones*, 2008 WL 2276540, at *4. The Appellate Division's holding was based upon a reasonable determination of the facts; moreover, the holdings were not contrary to clearly-established Federal law. The Court denies the Petition as to the first claim.

### II.  Claim Two – Prompt Sentencing

### a.  Legal Standard

Within the Second Circuit's jurisdiction, the Sixth Amendment's Speedy Trial Clause does not apply to criminal sentencing proceedings. *See United States v. Ray*, 578 F.3d 184, 198-99 (2d Cir. 2009). The Second Circuit notes, however, that "[t]he Supreme Court has recognized, for example, that the Due Process Clause of the Fifth Amendment 'has a limited role to play in protecting against oppressive delay.' " *Id.* at 199 (quoting *United States v. Lovasco*,

431 U.S. 783, 789 (1977)). "In order to determine whether a defendant has been deprived of [his] due process right to a prompt sentencing, [the Court] 'must consider (1) the reasons for the delay as well as (2) the prejudice to the accused.' " *Id.* (quoting *Lovasco*, 431 U.S. at 790).

The Court must determine whether Petitioner "should bear responsibility for the delay" and whether "the prejudice claimed by [Petitioner], absent extraordinary circumstances, [is] substantial and demonstrable." *Id.* In the final analysis, Petitioner "must show both prejudice and an *unjustified reason* for the delay in order to prove a due process violation." *Id.* (emphasis added).

### b. Analysis

The Appellate Division reasonably held that Petitioner was solely responsible for the delay in his sentencing. The Appellate Division reasonably held that "nothing in the record suggest[ed] that the New York authorities were ever 'actually aware' of [Petitioner's] whereabouts." *Appellate Holding*. No reasonable court could hold otherwise: Petitioner fled his trial and assumed a new name until his arrest 29 years later. Any reasonable court would hold, as the Appellate Division did, that the delay was due *solely* to Defendant. The Appellate Division's holding was not contrary to Federal law; that court made a reasonable decision in light of the facts. This Court denies Petitioner's second claim.

## III. Claim Three (Notice) and Claim Four (Confrontation)

### a. Legal Standard

> Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence. The right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence. Consistent with [Federal Rule of Criminal Procedure] 43 and *Diaz* [*v. United States*, 223 U.S. 442, 455 (1912)], we conclude that it was.

*Taylor v. United States*, 414 U.S. 17, 20 (1973); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001) (*Taylor* "stand[s] for the proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct.").

"Under federal law, a defendant's knowing and voluntary waiver of his right to be present at trial may be inferred from the fact that he was advised when the proceedings would commence and that defendant subsequently failed to appear." *Sykes v. Hynes*, 322 F. Supp. 2d 273, 276 (2d Cir. 2004) (citing *Taylor*, 414 U.S. at 20).

"While the confrontation clause of the sixth amendment guarantees the right to be present in the courtroom at every stage of trial, this right can be waived. *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925 (2d Cir. 1974) (citing *Lewis v. United States*, 146 U.S. 370 (1862); *Illinois v. Allen*, 397 U.S. 337, 342-43 (1970) ("No doubt the privilege of personally confronting witnesses may be lost by consent or at times even by misconduct." (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934))).

### b. Analysis

#### 1. Claim Three

The Appellate Division reasonably concluded that Petitioner deliberately absented himself after trial began and, thus, the claim is without merit. There is no evidence (nor even a reasonable suggestion) Petitioner did not know the trial would continue on-schedule. The Court holds that, in accordance with *Taylor*, Petitioner's misconduct constituted a waiver of his right to attend the trial. The Appellate Division's holding was a reasonable application of Federal law.

#### 2. Claim Four

Petitioner's confrontation claim is without merit; as Respondent states, "[P]etitioner's Confrontation Clause claim is unsustainable because no additional witnesses testified after he absconded .... He was absent only for jury deliberations and the verdict ...." Resp't's Mem. L. 18, Resp't's Resp. There were no remaining victims to confront. Moreover, as with Petitioner's notice claim, Petitioner waived his Confrontation Clause rights when he voluntarily absented himself from the trial proceedings. The Appellate Division's decision as to this claim was not clearly contrary to Federal law.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus.

**SO ORDERED.**

Dated: June 28, 2013
      Central Islip, New York

                                                /s/ Thomas C. Platt
                                                Thomas C. Platt, U.S.D.J.